UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

MITCHELL J. COHEN,

              Debtor.
-------------------------------------------------------------------x
TREUHOLD CAPITAL GROUP LLC,

              Plaintiff,

- against -

MITCHELL J. COHEN, LEND AMERICA, WELLS
FARGO BANK, N.A., SAXON MORTGAGE
SERVICES, INC., MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., as nominee for
LEND AMERICA, INC., AMERICA'S SERVICING
COMPANY, and RICHARD L. STERN,

              Defendants.
-------------------------------------------------------------------x

Chapter 7

Case No.: 08-70271-478

Adv. Pro. No.: 08-8058-478

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Benowich Law, LLP
*Attorneys for Plaintiff*
By: Leonard Benowich, Esq.
1025 Westchester Avenue
White Plains, New York 10604

Meyer, Suozzi, English & Klien, P.C.
*Attorneys for Plaintiff*
By: Alan E. Marder, Esq.
990 Stewart Avenue
Garden City, New York 11530

Beck & Strauss, P.L.L.C.
*Attorneys for Defendant Mitchell J. Cohen*
By: Leland Stuart Beck, Esq.
50 Charles Lindbergh Blvd.
Uniondale, New York 11553

Honorable Dorothy T. Eisenberg

On June 29, 2009 this Court issued a Memorandum Decision granting Treuhold Capital Group, LLC's (hereinafter "Treuhold" or the "Plaintiff") motion for summary judgment in this adversary proceeding and denying the Defendants' joint motion for summary judgment concerning whether the Plaintiff can void the transfer of certain real properties by Defendant Mitchell J. Cohen ("Cohen" or the "Debtor") to himself. The Memorandum Decision was appealed, and on January 16, 2010 the District Court affirmed but remanded the matter back to this Court for a determination as to whether or not there was a joint venture and what offset, if any, should be credited to Cohen for payments made to Treuhold.

Pursuant to the remand, this Court held an evidentiary hearing on April 16, 2010 and the parties submitted post-trial memorandums. This Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (K) and (O) and 11 U.S.C. §§ 506 and 541. The following constitutes the Court's finding of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

Familiarity with the factual background and the circumstances of the bankruptcy case, this adversary proceeding, this Court's June 29, 2009 Decision and Order, and the District Court's January 6, 2010 Memorandum and Order is presumed and only the facts relevant to the issues before the Court shall be stated herein.

A. <u>The Relationship Between Treuhold and Cohen</u>

In December 2001 Alan Sarter ("Sarter"), the sole principal and member of Treuhold entered into a business arrangement with Cohen and Steve Wissak ("Wissak"), the principals and members of Metropolitan Housing LLC ("Metropolitan"). It is undisputed that the terms of their

business arrangement were not memorialized into a written agreement.  Pursuant to the business arrangement, Metropolitan would identify potential real estate that could be purchased by Treuhold.  If Treuhold decided to purchase the property, it would do so in its own name and with its own funds, or by obtaining a line of credit from Medallion Business Credit LLC ("Medallion"), and Medallion would require Treuhold to furnish a copy of the deed to the properties and pledge the properties to Medallion upon closing.  (Plaintiff's Post-Trial Memorandum at 7); (Defendant's Post-Trial Memorandum at 3).

If Treuhold purchased the property, then Metropolitan's role in the arrangement was to repair and rehabilitate the property, as well as market it.  (Plaintiff's Post-Trial Memorandum at 8); (Defendant's Post-Trial Memorandum at 4).  Once the property was sold to a third-party, Treuhold would recover its investment in acquiring the property as well as interest thereon and the cost of obtaining insurance on the property, and Metropolitan would recover its expenses.  Only after these distributions were made would the parties divide any remaining profit equally.  (Plaintiff's Post-Trial Memorandum at 8); (Defendant's Post-Trial Memorandum at 4).

Prior to the Debtor's bankruptcy filing, the Debtor made several transfers of property in his own name without Plaintiff's knowledge, allegedly in order to raise capital in part to cover post-closing expenses incurred by Metropolitan in repairing the properties. Two of these transfers are the subject of this adversary proceeding: the transfers of 39 Coursen Place, Staten Island, New York (the "Coursen Property") and 22-25 Brookhaven Avenue, in Queens County, New York (the "Brookhaven Property", together with the Coursen Property, the "Properties").[1] Once Sarter discovered the transfers he confronted Cohen who acknowledged that Treuhold was owed funds from the transfers.  The Debtor, Wissak and Metropolitan entered into a letter

---

[1] Additional information about the circumstances surrounding these Properties can be found in this Court's June 29, 2009 Decision and Order and the District Court's January 6, 2010 Memorandum and Order.

3

agreement in January 2007, individually and as members of Metropolitan, (the "January 2007 Agreement") acknowledging that they owed Plaintiff $3,104,086.00, inclusive of all sums due for principal, interest and Plaintiff's profit participation (the "Indebtedness").

After the Debtor, Wissak and Metropolitan failed to comply with the January 2007 Agreement by paying off the debt, in April 2007 the parties agreed to enter into another agreement, a Settlement and Forbearance Agreement (the "April 2007 Agreement"), whereby the Debtor, Wissak and Metropolitan (the "Obligors") acknowledged that they were, jointly and severally, indebted to the Plaintiff in the amount of $1,935,986.02 as of February 15, 2007 for the principal it had invested plus interest and the Plaintiff's profit participation.[2] At the time the parties signed the April 2007 Agreement the parties acknowledged that $622,705.00 had been paid by the Obligors towards the debt. In further satisfaction of the debt, the following payments were to be made:

- Wissak was to pay $657,000.00, plus interest within 6 months of the Agreement.
- Wissak and Cohen, jointly and severally, were to pay $200,000.00, plus interest from February 2007 in two installments, with $100,000.00 due on or before April 30, 2007 and the remaining $100,000/00 due on or before June 30, 2007.
- Cohen was to pay $457,000.00 in monthly installments due on the first of each month, with payment to be completed by July 1, 2008.

*In re Cohen*, 422 B.R. at 363.[3] Attached to the April 2007 Agreement was a schedule that showed an accounting for nine parcels of property and a breakdown for how the parties arrived at the $1,935,986.02 debt. *See id.* There was no evidence provided as to how these payments were

---

[2] All prior understandings and agreements between the parties whether oral or written (including, but not limited to the January 2007 Agreement) were superseded by the April 2007 Agreement.

[3] In addition to these payments Wissak was to give Treuhold a mortgage of $857,000.00 on his real property, Cohen was to deliver to Treuhold an assignment of a life insurance policy in Cohen's name for $600,000.00, and the parties were to pay Treuhold's attorney's fees incurred in relation to the April 2007 Agreement.

4

allocated across the various properties that were the subject of the April 2007 Agreement, including the Brookhaven Property and the Coursen Property.

The Debtor and Wissak made payments towards the $1,935,986.02 owed under the April 2007 Agreement before defaulting. Due to the default, on October 25, 2007, Plaintiff commenced an action against Wissak and Metropolitan in the Supreme Court of the State of New York (the "Wissak Action") and obtained a Judgment in the amount of $761,522.00 against Wissak and Metropolitan, which represented the $657,000.00 plus interest to the date of entry of the judgment. To date there has been no evidence proffered that this judgment amount has been paid.

B. The Debtor's Bankruptcy Filing and Related Adversary Proceeding

On January 21, 2008 the Debtor filed for chapter 7 relief, and thereafter, on March 21, 2008 the Plaintiff commenced the instant adversary proceeding against Cohen and the mortgagees in order to have title to the Brookhaven Property and the Coursen Property returned to Treuhold. Both the Plaintiff and the Defendants filed motions for summary judgment, and on June 29, 2009 this Court issued its Memorandum Decision and Order (the "June 2009 Memorandum Decision"). In its June 2009 Memorandum Decision, this Court granted the Plaintiff's motion for summary judgment and denied the Defendants' joint motion for summary judgment.

In granting the Plaintiff's motion for summary judgment this Court determined that (1) the Plaintiff and Metropolitan were not engaged in a joint venture; (2) the Debtor did not have actual authority or apparent authority to sign Sarter's name to the deeds to the subject Properties; (3) the Debtor's signing of Sarter's name on the deeds to the Properties constituted a forgery; (4) the forged deeds were void *ab initio* along with the mortgage liens against the Properties; (5) the

5

affirmative defenses asserted by the Defendants were denied; and (6) the Properties were not property of the Debtor's bankruptcy estate under 11 U.S.C. § 541. *In re Cohen*, 418 B.R. 785, 809 (Bankr. E.D.N.Y. 2009). Pursuant to its decision, this Court determined that Plaintiff was entitled to the recovery of the Properties free and clear of all existing liens. *See id.*

### C. The District Court Decision

The Defendants appealed this Court's decision, and in its January 6, 2010 Memorandum and Order, the District Court affirmed this Court's June 2009 Memorandum Decision. Although the District Court held that the transfers of the Brookhaven Property and the Coursen Property by Cohen were fraudulent, and that this Court properly set aside the transfers, the District Court concluded that there were disputed issues of material fact that existed with respect to whether there existed a joint venture between the parties and how much money Treuhold was entitled to from the Debtor. Thus, the District Court remanded the adversary proceeding to this Court to make findings on those two issues.

Thereafter, on April 16, 2010 this Court held an evidentiary hearing on the issue of whether there was a joint venture, and whether any offset is warranted, based upon payments already recovered under the April 2007 Agreement, or otherwise, for any outstanding money that may be determined to be owed to Treuhold. The parties made post-hearing submissions.

## DISCUSSION:

### 1. Did the Parties Enter Into A Joint Venture?

The Debtor argued that this Court erred in concluding that the fee title for the Properties was to be conveyed to Plaintiff because Treuhold and Metropolitan were engaged in a joint venture, and as such Metropolitan had a beneficial interest in the Properties. The District Court concluded that such a determination could not be made at the summary judgment level and

remanded the issue for this Court to conduct an evidentiary hearing. Upon review of all of the evidence, the testimony heard at the recent hearing and the applicable law, this Court concludes that Treuhold and Metropolitan did not enter into a joint venture.

    A. *Standard For A Joint Venture*

It is well established that under New York law a party seeking to prove the existence of a joint venture must show: (1) the existence of a specific agreement between two or more persons to carry on an enterprise for profit; (2) evidence in the agreement of the parties' intent to be joint venturers; (3) a contribution of property, financing, skill, knowledge, or effort by each party to the joint venture; (4) some degree of joint control over the venture by each party; and (5) the existence of a provision for the sharing of both profits and losses. *See Brown v. Cara,* 420 F.3d 148, 159-60 (2d Cir. 2005); *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. N.Y. 2003); *Cross Media Mktg. Corp. v. CAB Mktg.* (*In re Cross Media Mktg. Corp.*), 367 B.R. 435, 455 (Bankr. S.D.N.Y. 2007); *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2010 WL 446042, *4-6 (E.D.N.Y. Feb. 1, 2010).

Cohen, the party asserting the joint venture, bears the burden of establishing that Treuhold and Metropolitan entered into a joint venture. *De Vito v. Pokoik*, 150 A.D.2d 331, 540 N.Y.S.2d 858, 859 (App. Div. 1989). If the proponent fails to show all of the elements to establish a joint venture, then that failure is fatal to the proponent's allegation of the existence of the joint venture. *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) ("The absence of any one element 'is fatal to the establishment of a joint venture.'"); *Zeising v. Kelly*, 152 F. Supp. 2d 335, 347-348 (S.D.N.Y. 2001). Specifically, "[i]f there was no agreement as to the manner in which the parties were to share in the profits and the losses, the agreement did not create a joint venture." *Zeising*, 152 F. Supp. 2d at 348-49 (citations omitted);

*Shore Parkway Assocs. v. United Artists Theater Circuit, Inc*., 1993 U.S. Dist. LEXIS 12663 (S.D.N.Y. Aug. 31, 1993) (noting that an agreement to share profits and losses is an "indispensible essential of a … joint venture").

    B.  *There Was No Agreement As to Losses*

It is undisputed that there is no paperwork or writing that evidences that Treuhold and Metropolitan agreed to enter into a joint venture. (Plaintiff's Post-Trial Memorandum at 11); (Defendant's Post-Trial Memorandum at 3). As such, as the proponent of the alleged joint venture, Cohen faces an uphill battle to meet his burden. However, the absence of a written agreement is not fatal to the allegation of a joint venture. As the District Court noted in *Milton Abeles, Inc.*, "where the alleged agreement is oral, parties may demonstrate their intent by combining property and efforts in a manner such that they are necessarily subject to their joint venturers' corresponding efforts and potential failures." 2010 WL 446042, *4; *see also Zeising v. Kelly,* 152 F.Supp.2d 335, 347 (S.D.N.Y.2001). The intent to enter into a joint venture can be "implied ... from the totality of the conduct alleged.'" *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.,* 309 A.D.2d 288, 765 N.Y.S.2d 575, 584 (App. Div. 2003).

The parties dispute whether or not there was ever an oral agreement as to how losses would be allocated between Treuhold and Metropolitan. At the Hearing Sarter, Treuhold's principal, testified that at their initial meeting he told Cohen that he did not want to be partners with him, and that he and Cohen never discussed losses. (Transcript at 207-210). Sarter stated that as a lawyer and a businessman he understood that he was taking the sole risk on the property, and that he would not enter into a joint venture without a writing explaining the obligations of the parties. (Transcript at 41-42). Furthermore, Sarter testified that he had practiced as a real estate attorney with experience in real estate finance, partnership and joint

venture law, and that he drafted many joint venture agreements during his career. (Transcript at 204). In light of his past experience, he was adamant that he never entered into a joint venture with Metropolitan. (Transcript at 204).

Cohen disputed Sarter's recollection of their arrangement and testified that on "day one" he and Sarter discussed how Treuhold and Metropolitan would bear losses. (Transcript at 108). In support of his assertion, Cohen testified that if there were expenses on one property that could result in a showing of a loss on that property, then he and Sarter would agree to move that expense to another closing that had a profit which would be able to absorb the costs of the expenses on the prior transaction. (Transcript at 112). However, Cohen also testified that he and Sarter did not discuss, in detail, how losses would be allocated. (Transcript at 112) ("I am sure that we did not discuss losses in detail."). Cohen asserted that all of the transactions that were entered into by Treuhold and Metropolitan are evidence of the intent of the two entities to form a joint venture.

Even if there was this loose and unconventional arrangement to apply losses to profitable deals, this served only an accommodation to resolve some tax or other liability issues. It does not support a finding that the parties intended to create a joint venture.

In addition, Cohen testified that over the course of the 120 plus property transactions between Treuhold and Metropolitan, the fact that Metropolitan paid for insurance on the properties and that Treuhold charged interest on the properties are further evidence of the parties' agreement to share losses and establish a joint venture. The Court is not persuaded by Cohen's argument. This more clearly resembles the originally described arrangement where Metropolitan and the Debtor were acting as agent for the Plaintiff in finding, repairing and maintaining the property until it was sold. When it was sold, Treuhold would be paid for its costs, Metropolitan

would be paid for its costs, and if there was a surplus it would be evenly distributed between the parties.

Parties to a joint venture must make a "mutual promise" to bear the burdens of the losses. *See De Vito v. Pokoik*, 150 A.D.2d 331, 331 (2nd Dep't 1989). "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. There must be an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2010 WL 446042, *5 (E.D.N.Y. Feb. 1, 2010) (*quoting Tractebel Energy Mktg., Inc. v. AEP Power Mftg.*, 487 F.3d 89, 95-96 (2d Cir. 2007). In light of the dispute between the parties as to the understanding between them, the Court must determine whose testimony to credit. Having reviewed and evaluated all of the evidence and the testimony of the witnesses, the Court concludes that Sarter's testimony on this issue is credible, and Cohen's testimony is not.

The Court only has Cohen's testimony to support his assertion of a joint venture, and notably, when pressed for more details, Cohen was unable to recall when and where such a loss occurred that was shared by the parties. (Transcript at 115). He was also unable to provide a further description of the conversation he had with Sarter as to how they would allocate losses. In contrast, Sarter was involved in drafting joint venture documents for clients and understood the importance of memorializing such agreements to writing. Had he intended Metropolitan and Treuhold to form a joint venture, he would have certainly reduced the agreement to writing. *See e.g. Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2010 WL 446042, *6 (E.D.N.Y. Feb. 1, 2010); *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 173 (S.D.N.Y. 2004).

Cohen argues that the time, money and effort Metropolitan put into each property shows that Metropolitan had a substantial interest in the property, but the evidence only shows that the parties discussed how they would share the profits, not how they would share the losses. The only example cited to by Cohen in support of the parties' "agreement" to share losses was with respect to a piece of property that was sold at a loss in order to resolve litigation due to the encumbrances on that property. This one transaction, out of over 120 transactions, is not enough to satisfy the burden for concluding that there was a joint venture between Treuhold and Metropolitan. As pointed out by the Plaintiff in its Post-Trial Memorandum, that property was expressly excluded from the parties' Settlement and Forbearance Agreement and is not enough to show the parties original intent when they formed their business relationship. (Plaintiff's Post-Trial Memorandum at 17-18).

Upon consideration of the evidence and the testimony of the witnesses, the Court finds that there is no evidence in support of any agreement between Treuhold and Metropolitan to share any losses arising from a sale of property. Thus, the Court cannot find that the Defendant has met all of the elements necessary to establish the existence of a joint venture.

## 2. **How Much Is Owed To Treuhold Under the April 2007 Agreement?**

The District Court also remanded to this Court the question of whether an offset should be afforded to Treuhold due to monies already recovered by Treuhold in connection with the April 2007 Agreement. *In re Cohen*, 422 B.R. at 380. The District Court held that credit should be given to the Defendants where they have already made payments to Treuhold.[4] *Id.*

---

[4] As the District Court noted, the April 2007 Agreement was an executory accord, which afforded the Plaintiff with two remedies: (1) sue under the breach of the April 2007 Agreement, or (2) sue under its original claim to set aside the transfer of the Brookhaven and Coursen Properties, free and clear of all liens. *In re Cohen*, 422 B.R. at 375. The District Court also noted that Treuhold's decision to commence an action against Wissak and Metropolitan did not preclude Treuhold's ability to commence an action against Cohen under its rights outside of the April 2007 Agreement. *Id.*

Under the April 2007 Agreement, the parties agreed that Treuhold was owed $1,935,986.02. The Debtor and Wissak made the following payments prior to defaulting: (1) $622,705.00 on March 19, 2007; and (2) $200,000.00 on or before June 2007.[5]

Section 3(d) of the April 2007 Agreement required Cohen to pay Treuhold $457,000.00 in monthly installments, with $20,000.00 being due each month beginning in May 2007 through July 2008, and $50,000.00 would be due for the months of October 2007, January 2008, April 2008 and July 2008. At the Hearing Cohen alleged that he had paid approximately $150,000.00 of this amount to Treuhold. However, Cohen did not provide the Court with any receipt or proof of payment of the alleged $150,000.00.[6] (Transcript at 90-91).

At the Hearing a letter from Treuhold's counsel to Cohen, dated January 8, 2008, (the "Default Letter") was introduced into evidence. The Default Letter stated that Cohen had failed to pay the sums of $110,453.33 to Treuhold that was due as of December 31, 2007 pursuant to section 3(d) of the April 2007 Agreement. By this Court's calculations, during the period between May 2007 and December 2007, Cohen was obligated to pay $190,000 to Treuhold ($20,000.00 each month plus $50,000.00 due in October 2007). If Cohen was in default $110,453.33 as of January 2008, then he only paid Treuhold $79,546.67. Therefore, the total amount that Cohen would owe to Treuhold under Section 3(d) of the April 2007 Agreement is $377,453.33.

---

[5] The Judgment that Treuhold received against Wissak and Metropolitan will not be credited against the total amount owed to Treuhold, because, as noted above, there is no evidence that this judgment has been paid. The District Court clearly stated that Treuhold cannot receive "double recovery", but that Treuhold's claims against Wissak will remain valid until Treuhold receives payment. *In re Cohen*, 422 B.R. at 375-76.

[6] Cohen attempted to introduce into evidence copies of the front of checks that purported to be proof of payments to Treuhold. However, upon the objection of Treuhold's counsel, the Court denied the use of those checks as evidence due to the failure of counsel to provide copies of the backs of those checks, which would have proven that they were negotiated and to whom they were negotiated to. Additionally, Cohen did not provide the Court with printed statements from the bank that could have verified that the payments were made. When pressed for the whereabouts of the original documents, Cohen testified that he simply did not bring them to the Hearing, and Plaintiff's counsel noted that the copies had not been turned over to the Plaintiff prior to the Hearing.

Taking into consideration the $79,546.67 in payments made by Cohen, as well as the other payments made to Treuhold as noted above, the amount owed under the April 2007 Agreement is reduced by $902,251.66.

Additionally, pursuant to this Court's June 2009 Memorandum Decision and the District Court's January 6, 2010 Memorandum and Order, the fraudulent conveyances of the Properties were undone, and as a result the Properties reverted back to Treuhold.  Under the April 2007 Agreement, the parties agreed that the Properties would be valued at $750,830.12.[7]  Treuhold cannot recover the Properties and additionally hold Cohen liable for the Properties' agreed upon value.

The April 2007 Agreement states that Cohen, Metropolitan and Wissak each acknowledged that he or it was indebted to Treuhold, jointly and severally, in the amount of $1,935,986.02.  Thus, regardless of how the parties chose to allocate the payments, as described above, Cohen, Metropolitan and Wissak are jointly and severally liable for the total debt owed to Treuhold under the April 2007 Agreement.

Taking into consideration the payments made to Treuhold by Wissak and Cohen, and the value of the Properties, the total amount that Cohen, Metropolitan and Wissak owe to Treuhold under the April 2007 Agreement is $282,904.23.

## CONCLUSION:

Pursuant to the above findings of facts and conclusion of law, the Court finds that Treuhold and Metropolitan did not enter into a joint venture.  Furthermore, after crediting Cohen, Metropolitan and Wissak with the payments made to Treuhold and the agreed to value of the

---

[7] This is not to say that the $750,830.12 is the present value of the Properties or the total that could be pursued by Treuhold pursuant to its claims against Cohen.  Rather, as the parties agreed to the value of the Properties in the April 2007 Agreement, and those fraudulent transfers have been undone, the total amount under the April 2007 Agreement should be reduced by the sum of $750,830.12.

returned Properties as of the date of the April 2007 Agreement, the Court finds that under the April 2007 Agreement, Cohen, Metropolitan and Wissak owe Treuhold, jointly and severally, the sum of $282,904.23.

Dated: Central Islip, New York
      July 20, 2010

                                  *s/ Dorothy Eisenberg*
                                  Honorable Dorothy Eisenberg